IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Reff Properties, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 50002 |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael Woodward, et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

**ORDER**

      For the reasons stated below, Woodward and Bauer's motion [113] for judgment on the pleadings is granted. Judgment is entered in favor of Woodward and Bauer and against Reff on Counts I and II. Auto-Owners' motion [115] is granted in part and denied in part. Auto-Owners' motion is granted as to Count III. Auto-Owners' motion is granted as to all claims in Count IV except the claim for litigation expenses, including attorneys' fees and costs, incurred by Reff in its litigation with Smith arising from Smith being made a joint payee on the Building Check. The motion is denied as to that claim. The remaining parties are directed to contact Magistrate Judge Johnston to schedule a settlement conference within the next 28 days.

**STATEMENT-OPINION**

      Reff Properties, LLC ("Reff") has pending a third-party claim [62] against Bauer Group Agency, Ltd. ("Bauer"), Michael Woodward, and Auto-Owners Insurance ("Auto-Owners"). The third-party complaint asserts a violation of Illinois law, 735 ILCS 5/2-2201(a), by Bauer (Count I), Woodward (Count II) and Auto-Owners (Count III). It also asserts claims against Auto-Owners for negligence (Count IV) and breach of a contract in which Reff was a disclosed third-party beneficiary. This third-party action was initially filed as a third-party complaint in a bankruptcy court adversary proceeding brought by the trustee of the bankruptcy estate of Pinewood Buffet & Grill, Inc. ("Pinewood"). On April 9, 2014, this court withdrew the reference of the adversary proceeding, including the third-party action from the bankruptcy court [12]. The parties agreed to wait for the court's decision on summary judgment motions filed in the trustee's action before proceeding on the third-party action. The summary judgment motions were decided on July 22, 2015 [103]. Auto-Owners now moves [115] to dismiss the third-party

1

complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Bauer and Woodward move [113] for judgment on the pleadings. Fed. R. Civ. P. 12©[1].

In the adversary proceeding, the trustee had sought a declaration that the proceeds of insurance being held in a trust account by Attorney Fishburn pursuant to the terms of a trust agreement among Reff, Pinewood, and Jennifer Smith were property of the bankruptcy estate. Reff had counterclaimed that the bulk of the proceeds belonged to it not the bankruptcy estate. Reff and the trustee filed cross motions for summary judgment. The court ruled the trustee was entitled to $41,431.58 from the proceeds of insurance on the contents of the building in which Pinewood operated and that Reff was entitled to the balance of the insurance proceeds ($439,252.33 on the building and $550.00 on the contents.) None of the parties (Reff, Smith, or the third-party defendants) disputed the trustee was entitled to the $41,431.58 from the contents proceeds.

Federal Rule of Civil Procedure 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Reff filed such a third-party complaint against the third-party defendants asking for an order requiring the third-party defendants to indemnify Reff for any amounts the court awarded to the trustee in the adversary proceeding.

The third-party complaint also asks the court to enter judgment in favor of Reff and against the third-party defendants in a sum in excess of fifty thousand dollars ($50,000.00). Federal Rule of Civil Procedure 18(a) provides, <u>inter alia</u>, that a party asserting a "third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." The third-party complaint does not identify specifically what claim the sum in excess of $50,000 is sought to compensate. However, the third-party complaint alleges in paragraph 35(b) that Woodward and Bauer's actions caused Reff to be injured in that "Reff has incurred and continues to incur substantial attorneys fees in litigating the claims of Pinewood's bankruptcy Trustee to the proceeds of the insurance checks." In paragraph 39(a) in a negligence count against Auto-Owners, the third-party complaint alleges "Reff has incurred and continues to incur substantial attorney's fees in litigating the claims of both Smith and Pinewood's bankruptcy trustee to the proceeds of such insurance checks."

A recap of the facts as found in the court's July 22, 2015 summary judgment order [103] will provide some background.

Todd and Amy Reid were the sole shareholders of Pinewood. Bauer was a disclosed agent of Auto-Owners authorized to issue insurance binders on Auto-Owners's behalf. Woodward was a licensed insurance producer in Illinois working for Bauer.

---

[1] The standard for granting a 12(c) motion is the same as that for granting a 12(b)(6) motion. <u>Lodholtz v. York Risk Services Group</u>, 778 F.3d 635, 639 (7th Cir. 2015).

2

In August 2009, Reff purchased a building in Freeport, Illinois along with certain equipment paying $340,000. $225,000 of the purchase price was allocated to the building and $115,000 to the equipment. One year later, in August 2010, Pinewood entered a lease with Reff for the real property and equipment. The lease required Pinewood to provide fire and casualty insurance on the leased premises with Reff as the named insured and liability and dram shop insurance with Reff named as an additional insured. Pinewood worked with Woodward to obtain insurance on the premises from Auto-Owners through its agent, Bauer. At some point, Woodward advised Amy that Reff could not be identified as the "named insured" on the proposed policy because Pinewood would be the entity paying the premiums.

Smith lent Pinewood $100,000 to start its business evidenced by a promissory note. Smith's loan to Pinewood was unsecured. Prior to making the loan to Pinewood, Smith indicated to Pinewood's owners that she wanted to be secured in connection with her anticipated loan and raised the topic of insurance. Amy advised Smith that Amy had spoken with Woodward who had told Amy that Smith could be added to the insurance policy. Smith assumed that if she was identified in the insurance policy, in the event of a casualty, Reff would receive the fair market value of the building and then she would be paid the balance of her loan. Todd testified that approximately a week before the execution of the lease agreement with Reff, Todd had a discussion with Woodward. From this discussion, Todd understood Reff was to be the beneficiary of the building and personal property portion of the contemplated insurance policy.

An insurance binder, dated August 10, 2010, was issued by Bauer with an effective date of August 11, 2010 and expiration date of September 10, 2010 listing Pinewood as the insured. The binder bound coverage for property insurance (with coverage forms for "Building, Business Contents, Sign, Food Spoilage".) It also bound coverage for commercial general liability, excess liability, and workers' compensation and employer's liability coverages. Reff was listed on the binder and its interest was indicated by check marks being placed in 3 separate boxes one each labeled respectively "mortgagee", "loss payee", and "additional insured". An additional binder, dated August 10, 2010, was also issued by Bauer with an effective date of August 11, 2010 and expiration date of September 10, 2010 listing Pinewood as the insured. It was identical to the other binder except that Reff was not listed and, instead, Smith was listed as loss payee. An insurance application was made on behalf of Pinewood in which Pinewood is listed as the named insured, Smith as an additional interest of "loss payee" and Reff as an additional interest of "mortgagee". When the policy itself was issued by Auto-Owners, however, it did not list Reff as the named insured (as called for by the lease) or as mortgagee, loss payee and additional insured as provided in the binder. The policy listed Pinewood as the insured and listed only Smith in the section "secured interested parties and/or additional interested parties." Smith's interest is identified as "loss payable". The policy was for the period August 11, 2010 to August 11, 2011. Todd and Amy received a copy of this policy but did not read it.

A fire occurred on June 2, 2011. On June 3, 2011, Reff's owner (Peter Reff) and Pinewood's owners were told by Peter Salm, the insurance adjuster for Auto-Owners, that Reff was not named on the insurance policy as either the named insured or in any other capacity.

3

Subsequently, on June 14, 2011, a change endorsement to the policy was made. The change is described on a policy declaration page as: "added the following mortgagee: Reff Properties." The declaration page notes "Change Endorsement Effective 08-11-2010." August 11, 2010 was the original effective date of the policy and the binders mentioned above. As set forth above, Reff did not hold a mortgage on the property. Reff owned the property and leased it to Pinewood. At no time after June 2, 2011 but prior to June 14, 2011 did anyone have any discussion with Smith about adding Reff to the insurance policy post-fire.

On November 29, 2011 Auto-Owners issued a check ("Building Check") in the sum of $439,252.33 payable to Pinewood, Reff, and Smith for the "actual cash value of building less deductible and mitigation." On that date, Auto-Owners also issued a check ("Contents Check") in the amount of $41,981.58 payable to Pinewood and Reff for the "actual cash value of contents less mitigation."

In February 2012, the parties deposited these checks into Fishburn's trust account pursuant to an attorneys trust account agreement ("Trust Agreement") dated "February __, 2012." The Trust Agreement provides in relevant part that the Building Check is "to be disbursed as directed pursuant to a written agreement executed by Pinewood Buffet & Grill, Inc., Reff Properties, LLC and Jennifer Smith, or in lieu thereof, pursuant to court order." The Trust Agreement further provides that the "parties hereto agree that this Agreement is entered into for the purposes of facilitating receipt of said checks from the Insurance company pending resolution of current issues between the parties and said sum as held in said trust account shall have the same legal character for all purposes as when held by the insurance company subject to the terms of the relevant insurance policy." No agreement was reached and eventually Pinewood filed a Chapter 7 bankruptcy petition on August 30, 2012.

In ruling on the summary judgment motions, the court found (among other things) that the post-fire change endorsement to the policy issued June 14, 2011 reformed the policy to conform it to the contract of insurance formed by the August 10, 2010 binder which named Reff as mortgagee, loss payee, and additional insured. Reff was entitled to the insurance proceeds attributable to loss to the building. Pinewood never had an interest in those proceeds so Pinewood's bankruptcy trustee never obtained an interest in them. The court also found that Smith, as an unsecured creditor of Pinewood, did not have an insurable interest in the property and, therefore, had no claim to the proceeds, despite having been listed as a loss payee on the policy.

Because the court awarded Reff the disputed insurance proceeds, Reff's claims against the third-party defendants for indemnification for any amounts awarded to the trustee are moot. The crux of what remains of Reff's third-party complaint is Reff's claim that Bauer, Woodward, and Auto-Owners, by failing initially to cause the policy to issue with Reff listed as a loss payee, and, by listing Smith as a loss payee, though she had no insurable interest in the property, damaged Reff by forcing it a) to incur legal fees and costs in litigating the trustee's adversary

proceeding to obtain the insurance proceeds and b) to incur legal fees and costs in litigating Smith's claim to the proceeds.

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Lodholtz v. York Risk Services Group, 778 F.3d 635, 639 (7th Cir. 2015) (internal quotation marks and citations omitted). The facts and all reasonable inferences from them are drawn in favor of the nonmovant. Id.

The third-party defendants argue that, under the "American Rule" governing the recovery of attorneys' fees, Reff cannot state a claim for the recovery of attorneys' fees. They also argue their actions were not wrongful and were not the proximate cause of Reff having to incur attorneys' fees. Reff maintains the "American Rule" does not apply to the facts as alleged in this case, that attorneys' fees are recoverable on the facts alleged, and that defendants' actions were wrongful and were the proximate cause of Reff having to incur those attorneys' fees.

Under Illinois law, "[w]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties or place him in such relation with others as to make it necessary to incur expense to protect his interest, the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees." Ohio Nat'l Life Assurance Corp.v Davis, 803 F.3d 904, 910 (7th Cir. 2015) (internal quotation marks and citations omitted). So, while the "American Rule", with limited exceptions, generally bars recovering attorneys' fees incurred in pursuing or defending a claim (if A sues B for negligence, neither A nor B can recover attorneys fees incurred in prosecuting or defending that, claim) see, Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health and Welfare Trust Fund, 35 N.E.3d 988, 991-92 (Ill. App. 2015), attorneys' fees are recoverable in a case where the attorneys' fees were incurred because the defendant's wrongful actions required the plaintiff to pay an attorney to "protect his interest." Davis, 803 F.3d at 910.

In Davis, the Court of Appeals considered an appeal from a district court judgment which awarded the plaintiff, Ohio National, along with other damages, "$605,395.15 in damages in the form of attorney's fees and costs expended in seeking the declaratory judgment." Ohio Nat'l Life Assurance Corp. v. Davis, 10 C 2386, 2014 WL 5420057, *10 (N.D. Ill. October 24, 2014) (Durkin, J.) There, the plaintiff had sued one set of defendants for damages for conspiracy, fraud and breach of contract in procuring certain life insurance policies and another set of defendants for a declaratory judgment that insurance policies they owned were void ab initio due to their having been procured by the fraud, conspiracy, and breach of contract of the first set of defendants. The Court of Appeals affirmed the district court's award of attorneys'fees incurred in the declaratory judgment portion of the lawsuit. Davis, 803 F.3d at 910.

Reff's claims here are not barred by the "American Rule." The third-party defendants argue attorneys' fees are only recoverable where they are incurred in an action separate from the

5

action in which they are sought to be recovered.  They argue that since the fees incurred by Reff in litigating with the trustee about the insurance proceeds were incurred in the same action in which Reff brings this third-party action seeking to recover the fees from the third-party defendants, that the fees sought are not recoverable.  However, Davis clearly belies this argument.[2]  They also contend attorneys' fees are only recoverable in the case of "willful, malicious or affirmative wrongful acts" citing in their reply brief Insurance Co. of North America v. J.J. Hubbard Co., 318 N.E.2d 289 (Ill. App. 1974).  But, this does not appear to be the law in Illinois.  Negligence has been held to be sufficient.  Sorenson v. Fio Rito, 413 N.E.2d 47 (Ill. App. 1980).  Reff alleges the third-party defendants wrongful actions forced it to incur attorneys' fees in litigating its claim to the proceeds against the claims of the trustee and Smith.  These allegations are sufficient to take the case outside the "American Rule".

Under Illinois law, "[g]enerally, proximate cause is an issue of material fact to be determined by the trier of fact.  But proximate cause may be determined as a matter of law where the facts show that the plaintiff would never be entitled to recover.  Proximate cause consists of two requirements: cause in fact and legal cause."  Rahic v. Satellite Air-Land Motor Service, 24 N.E.3d 315, 321 (Ill. App. 2014) (citations omitted).  To be a "cause in fact" defendant's "conduct must constitute a material element and a substantial factor in bringing about the injury.  If the plaintiff's injury would not have occurred absent the defendant's conduct, then the conduct forms a material element and substantial factor in bringing about the injury."  Id. (internal quotation marks and citations omitted).  "Legal cause" is a determination that "the injury is of the type that a reasonable person would see as a likely result of his or her conduct."  Id. (citations omitted).

Because the court previously determined that the post-fire reformation of the policy was effective, the original failure to name Reff on the policy was not the proximate cause of Reff's claimed losses arising from the trustee's claim to the proceeds.  Likewise, the naming of Smith as a loss payee on the policy was not the proximate cause of Reff's claimed losses arising from the trustee's claim to the proceeds.

The reformation occurred more than a year before Pinewood's bankruptcy.  The reformation was effective to make Reff a loss payee under the policy as its interests appeared.  Since Reff owned the building, its interest was clear.  The failure of the originally issued policy to conform to the terms of the insurance binder was corrected by the post-fire reformation which made the correction effective as of August 11, 2010, the date the original binder was issued.  A reasonable person would not likely have foreseen that after the third-party defendants corrected (effective as of the original binder date) an error in the insurance policy they had bound and issued in order to conform the terms of that policy to the terms agreed upon by Pinewood and the third-party defendants in the original binder, that more than a year after that reformation (and two

---

[2] The district court opinion contains an extensive discussion of Illinois law demonstrating that no separate action is required.  Ohio Nat'l Life Assurance Corp. v. Davis, 10 C 2386, 2014 WL 5420057, *6-7 (N.D. Ill. October 24, 2014).

years after the effective date of the reformed policy) Pinewood would file a Chapter 7 bankruptcy petition and that the trustee of that bankruptcy estate would bring an adversary proceeding against Reff claiming Reff was not entitled to the insurance proceeds despite being named as a loss payee by virtue of the change endorsement and clearly being the owner of the building which suffered the loss that generated the proceeds.

As detailed in the court's order on summary judgment, there was no dispute that Reff owned the building, that the lease required Pinewood to provide insurance on that building with Reff as the insured, that the parties to the insurance contract intended Reff to be covered by the policy, that those parties intended to correct the policy, through the change endorsement, to conform it to the contract when they discovered the policy did not conform, and that the change endorsement was issued making that correction. Given these facts, a reasonable person would have been unlikely to foresee the chain of events leading to the trustee's adversary complaint against Reff.

Reff also argues the third-party defendants naming Smith as a loss payee, though Smith clearly had no insurable interest in the building or equipment, caused Reff to incur attorneys' fees in the trustee's adversary proceeding. Taking as true the allegations of Reff's third-party complaint, Smith was named a loss payee on the policy based on Woodward advising Amy that Pinewood could add Smith to the policy as a way of providing Smith some "security" for the loan Smith made to Pinewood. But, Smith clearly had no insurable interest in the building owned by Reff or in any asset of Pinewood. Smith could never have recovered under the policy because she could never suffer a loss to covered property. She had no interest in any covered property.

Third-party defendants counter that the erroneous naming of Smith was not the proximate cause of Reff's incurring attorneys' fees in the trustee's action. They argue that the trustee's decision to claim Reff had no interest in the proceeds, rather than anything to do with Smith being listed as a loss payee, was the proximate cause of any attorneys' fees Reff incurred.

The third-party defendants are correct as to the attorneys' fees incurred by Reff in the adversary proceeding. The trustee brought the adversary proceeding alleging that Reff was not named on the original insurance policy as an insured or loss payee. Only Pinewood was listed as the insured on the policy. Since only Pinewood was the named insured at the time of the loss, the trustee alleged Pinewood's bankruptcy estate alone was entitled to the insurance proceeds. The adversary complaint alleges Smith was an unsecured creditor of Pinewood and that Smith was listed on the policy under the heading "Secured Interested Parties."

In her answer to the adversary complaint, Smith admitted she was an unsecured creditor and admitted that the bankruptcy estate was entitled to the insurance proceeds. Smith never advanced a claim in the adversary proceeding that she was entitled to any of the proceeds. The trustee did not claim that Smith had an interest in the proceeds and that the trustee was entitled to step into Smith's shoes and enforce that interest on behalf of the estate.

7

The only way Smith being listed on the policy came into play in the adversary proceeding was the trustee's argument on summary judgment that the change endorsement correcting the mistaken omission of Reff was ineffective because Smith did not consent to it. However, Smith's consent was not required. Smith admitted in her answer to the trustee's adversary complaint that she was an unsecured creditor of Pinewood. As such, she had no insurable interest in the covered property and thus no voice in the policy's being reformed. See Dkt # 103, p. 6.

As discussed above, a reasonable person would not likely have foreseen the trustee's suit coming much less that in that suit the trustee would make the unwinnable argument that an admittedly unsecured creditor, with no insurable interest in the covered property, was required to consent to the policy's reformation.

In sum, neither the failure to name Reff nor the naming of Smith on the original policy were the proximate cause of Reff being sued in the adversary proceeding and having to incur attorneys' fees to defend its interests in that suit. The trustee's decision to seek to obtain insurance proceeds that contractually belonged to Reff by attempting to negate that contract was the proximate cause of Reff having to litigate its right to the proceeds in this action. Reff cannot recover the attorneys' fees and costs it incurred in the action brought against it by the trustee.

Reff also alleges it was forced to incur attorneys' fees in litigating Smith's claim to the proceeds. While Smith obviously had no insurable interest in the covered property, Reff alleges she was listed as a loss payee on the policy and when Auto-Owners issued the Building Check it made the check payable to Pinewood, Reff and Smith. According to the allegations in the third-party complaint, Smith would only endorse this check if it and the Contents Check were placed in escrow. The proceeds were, in fact, placed in escrow under the terms of an agreement that allowed them to be disbursed only upon the agreement of Reff, Pinewood and Smith or by court order. No agreement was reached so, Reff argues, litigation with Smith, and its attendant costs and attorneys' fees, was Reff's only option to secure the proceeds it was entitled to be paid under the policy.

These allegations are sufficient to state a claim against Auto-Owners.[3] Taking the allegations as true and drawing all reasonable inferences in Reff's favor, the third-party defendants, knowing that Smith had no insurable interest in the covered property, listed her as a loss payee. Doing this would have been harmless to Reff if Auto-Owners had paid Reff for its loss to covered property after the fire. Smith's status would have been irrelevant to Reff as long as Reff got paid in full. However, when Auto-Owners failed to pay Reff the proceeds it was due and instead paid the proceeds to Smith, Reff and Pinewood as joint payees, Auto-Owners put

---

[3] Only Count IV against Auto-Owners for negligence contains the allegation Reff was required to incur attorneys' fees in litigating the claims of Smith. Dkt # 62, p.11, par. 39(a). The allegation applicable to the other counts only alleges Reff was forced to incur attorneys' fees in litigating the trustee's claims. Dkt # 62, p.8, par. 35(b).

8

Reff in the position where it had to "incur expense to protect [its] interest." Davis, 803 F.3d at 910. Unless Smith agreed to sign over the proceeds to Reff without any cost to Reff, Reff was stuck either suing Smith to compel her to release the proceeds to Reff or paying Smith something to get her to sign. Reff alleges Smith did not agree to sign the proceeds over to Reff and Reff had to bring an action against Smith to obtain release of the proceeds to Reff.

These allegations are sufficient to plausibly allege that Auto-Owners is liable to Reff for costs associated with Reff's action against Smith to obtain release of the proceeds Auto-Owners wrongly paid not to Reff but to Reff, Pinewood, and Smith jointly.

It is important to note at this point that surviving a motion to dismiss is not the same as winning the case. Evidence may prove Auto-Owners was justified in acting as it did. It may be difficult for Reff to parse out its legal expenses attributable to the surviving claim from its expenses attributable to the other aspects of this action and the trustee's action. Before the parties incur more litigation expenses in this third-party action (which they all agree at this point will not be recoverable from the other), they would be well advised to settle this matter. The remaining parties are directed to contact Magistrate Judge Johnston to schedule a settlement conference within the next 28 days.

For the foregoing reasons, Woodward and Bauer's motion [113] for judgment on the pleadings is granted. Judgment is entered in favor of Woodward and Bauer and against Reff on Counts I and II. Auto-Owners' motion [115] is granted in part and denied in part. Auto-Owners' motion is granted as to Count III. Auto-Owners' motion is granted as to all claims in Count IV except the claim for litigation expenses, including attorneys' fees and costs, incurred by Reff in its litigation with Smith arising from Smith being made a joint payee on the Building Check. The motion is denied as to that claim. The remaining parties are directed to contact Magistrate Judge Johnston to schedule a settlement conference within the next 28 days.

Date: 2/04/2016                ENTER:

*Philip G. Reinhard*
United States District Court Judge

Notices mailed by Judicial Staff. (LC)
Copy to Magistrate Judge Johnston

9